[No. 3453.]

HALL v. RAMSEY AND BYARS.

EQUITY—*Following Trust Funds.* Appellees entered into a written contract with one Smith, cashier of a bank, for the purchase of certain lands. Part of the purchase money was represented by a promissory note of $6,900, payable in monthly installments of not less than $100; appellees were to receive the title unencumbered. Smith acted for the bank, which was the equitable owner of the lands, and Smith's deed to appellees was deposited in the bank, as an escrow. Appellees made monthly payments, according to the terms of their promissory note, until no more than $700 remained due thereon, for both principal and interest. The bank then closed its doors and a receiver was appointed. At the time of appellees' purchase the property was subject to an encumbrance of $2,500, but of this appellees had no notice. After the purchase price, less by the amount of the encumbrance, had been discharged, Smith issued cashier's checks for the amounts paid, which were attached to the agreement of purchase and the deed to appellees so deposited in escrow. These payments amounted to $2,000. Held that no trust relation existed as to this amount and that the court wherein the receiver was appointed was without authority to order that, upon payment of the residue of $700, the receiver should discharge the encumbrance and deliver the deed to appellees.

But held that the appellees should be declared general creditors of the bank for the amount.

A sum paid by appellees to the receiver was ordered returned to them.

*Appeal from Otero District Court.* HON. J. E. RIZER, Judge.

Mr. FRED A. SABIN, for appellant.

Mr. JOHN H. VOORHEES, for appellees.

Presiding Judge SCOTT delivered the opinion of the court.

This is an appeal from an order of the district court of Otero county allowing the claim of appellees as a trust fund, in the matter of the receivership of the State Bank of Rocky Ford. There is no substantial conflict in the testimony and from which we gather the following facts:

On the 15th day of December, 1902, the State Bank of Rocky Ford was the owner of a lot and business building in the city of Rocky Ford, subject to an encumbrance of $2,500.00 secured by trust deed on the premises. The title to the premises had been taken and was then held in the name of E. J. Smith, cashier of the bank.

On that day and acting for the bank, Smith entered into a written contract with the appellees for the sale of the premises. It was understood by all parties that while the title was in Smith and the contract was made in Smith's name, yet the property was that of the bank and that the contract was for the bank. The purchase price agreed upon and which agreement was denominated an "escrow agreement," was $7,600.00. This was to be paid as fol-

lows: $350.00 cash, $350.00 on the 2d day of January, 1903, and a note of $6,900.00 with interest at eight per cent. per annum, due on or before 69 months from date, the principal and interest to be paid in monthly installments of not less than $100.00 each month. A warranty deed for the premises, in terms conveying the property to appellees free and clear of all encumbrances, was executed as of even date with the agreement and deposited together with it with the State Bank of Rocky Ford.

The agreement further provided that appellees were to have possession of the premises on January 2d, 1903, and were to pay all taxes and to keep the building on the premises insured in a sum not less than $4,000.00 in favor of the vendor. On the 18th day of December, 1902, Smith executed his note to the bank in the sum of $5,100.00 payable in 69 months. On the face of the note were written the words "Ramsey and Byars deal." Smith testifies that this note was for the purpose of convenience in carrying the account on the books of the bank. The two cash payments of $350.00 each, amounting to $700.00 and the note for $5,100.00 make a total of $5,800.00, a discrepancy between that and the purchase price of $1,800.00. What became of this is not clear from the record.

On the 31st day of December, 1907, at the time of the failure of the bank, the appellees had paid all of the agreed purchase price except the total sum of $700.55 due as principal and interest. The encumbrance of $2,500.00 on the property had not been discharged by the bank. But when all of the purchase price in excess of the amount of the encumbrance had been paid, the monthly payments were then re-

ceived by Smith, who issued the bank's cashiers' check in each instance and attached these to the escrow agreement.

These payments so made and for which such cashiers' checks were issued, amounted at the time of the failure of the bank, to the total sum of $2,-000.00. The monthly payments were credited alike on the note of appellees to Smith and the note of Smith to the bank. The petition of appellees prayed the court to declare this sum of $2,000.00 a trust fund and that upon payment by appellees of the sum of $700.55 due on the purchase price, that the receiver be ordered to pay off the $2,500.00 encumbrance and deliver to appellees the said warranty deed, for the premises, then held by him. This was in substance the order of the court and of which the receiver complains.

It appears also that prior to the filing of the petition in this case the appellees had paid to the receiver the sum of $125.00 which he accepted and still retains.

It will be seen that the only question for determination is as to whether or not the two thousand dollars paid by the appellees to the bank, under their contract of purchase, and for which cashiers' checks or certificates were so issued, constituted a trust fund within the meaning of the law.

Counsel submitted elaborate briefs and have made extensive oral arguments upon the questions of tracing trust funds, of estoppel, of agency and of the statute of frauds, all of which seem to have no place in the case, as we understand the facts.

It is contended by the appellees:

1. "That the money paid by appellees on their contract that are represented by cashiers' checks, is a trust fund to be applied in paying for the property and paying off the incumbrance thereon.

2. This money was turned into the general funds of the State Bank of Rocky Ford and became a part of its assets."

The court seems to have adopted this theory of the case and to have rendered judgment accordingly.

It is quite clear that if the appellees have any claim at all it is under and by virtue of their contract with the bank using the name of Smith, for the purchase of the premises. This is the contention of appellees as set out in their petition and in the briefs.

If then the contract was in fact the contract of the bank, though made in Smith's name, then there can be no element of agency or trust. In such case the bank agreed to sell, and Ramsey and Byars agreed to buy. The moneys paid by the latter were simply payments to the bank upon their contract with the bank. It may be presumed that it was the purpose of the bank to pay the encumbrance of $2,-500.00 when it had received the full consideration of the contract, and thereafter to deliver the deed. But there is no evidence as to any such agreement between appellees and Smith, or any other officer of the bank.

The appellees seem to have made the monthly payments from first to last as agreed in the contract. It is not contended by appellees, that they even knew cashiers' certificates were being issued,

nor does it appear that there was any subsequent or different agreement than the original.

We are unable to find in the record any evidence tending to show that at the time of the contract of purchase, or at any time before the failure of the bank, either Ramsey or Byars knew that there was an encumbrance on the premises. It is not referred to in the written agreement, nor in the warranty deed executed at the time. The petition of appellees recites:

"Your petitioners further allege that they are now informed and believe and so state the fact to be, that said property is now, and was at the time of said sale, subject to a certain encumbrance in the sum of twenty-five hundred dollars ($2,500.00), witnessed by one promissory note for said sum of twenty-five hundred dollars ($2,500.00) dated January 11, 1899, payable to Thurlow, Hutton and Williams on or before January 11, 1902, together with interest thereon at the rate of eight per cent. (8%) per annum, interest payable semi-annually, secured by deed of trust upon said property, hereinbefore described, which said deed of trust was duly recorded in the office of the county clerk and recorder of Otero county, Colorado; that no part of said note has been paid save and-except the interest thereon, and the same has been extended from time to time; that there is now due upon said note, as interest, the sum of one hundred forty-one dollars and twenty-five cents ($141.25) which together with the principal of said note makes the amount due thereon two thousand six hundred forty-one and 25-100 dollars ($2,641.25)."

From this allegation, and from an examination

of the agreement as well as the deed, it would seem that appellees were without actual knowledge of any encumbrance on the property prior to the failure of the bank, and that they trusted and relied solely on the agreement of the bank to deliver to them a deed for the premises, unencumbered, upon the completion of the payments agreed by them to be made.

The action of the bank alone, in issuing cashiers' certificates for certain payments made under the state of facts here, can create no fiduciary relationship between the bank and the appellees. The appellees are simply unfortunate in that they are the victims of misplaced faith and confidence in the integrity and stability of the bank with which they contracted.

Whether or not appellees may be held to be general creditors is not without difficulty, but it would seem that the issuance of the certified checks may be said to amount to an admission of indebtedness or liability under the contract, when considered with the whole conduct of the bank in relation thereto, and it would seem that equity should decree that they be declared general creditors to that extent. The question is not raised or discussed in the briefs.

We can find no legal basis, under the state of facts presented, for the order of the court holding the sums of money paid by appellees and for which cashiers' checks were issued, to be trust funds and entitled to preference, and must therefore hold such order to be error.

To that extent the order of the court is reversed with instruction that the order be further modified in that the sum of $125.00 paid by appellees to the receiver be repaid to them.

Reversed with instructions.

All the judges concurring.

Decided May 13, A. D. 1912. Rehearing denied July 8, A. D. 1912.